674 F.2d 34

**OVERSEAS FEDERATION OF TEACHERS, et al., Appellants,**

v.

**UNITED STATES of America, et al.**

**OVERSEAS EDUCATION ASSOCIATION, INC., Appellant,**

v.

**UNITED STATES of America, et al.**

Nos. 81–1208, 81–1370.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 15, 1982.

Decided March 12, 1982.

Michael Radzilowsky, Chicago, Ill., with whom Richard Price, Washington, D. C., was on the brief for Overseas Federation of Teachers, et al., appellants in No. 81–1208.

George Hyland, Alexandria, Va., for Overseas Education Association, Inc., appellant in No. 81–1370.

Andrew M. Wolfe, Atty., Dept. of Justice, Washington, D. C., of the bar of the Supreme Judicial Court of the Commonwealth of Massachusetts pro hac vice by special leave of the Court, with whom Charles F. C. Ruff, U. S. Atty. at the time the briefs were filed, and Anthony J. Steinmeyer, Atty., Dept. of Justice, Washington, D. C., were on the brief for appellees.

Before MacKINNON and WILKEY, Circuit Judges, and CORCORAN,* Senior District Judge.

Opinion PER CURIAM.

PER CURIAM:

These cases present for our consideration a question that was not addressed in an earlier decision of this court in *March v. United States*, 506 F.2d 1306 (D.C.Cir.1974): Whether a minor difference in the length of the school year is an aspect of basic compensation that must be taken into consideration by the Secretary of Defense in meeting the statutory obligation to "fix the basic compensation for teachers and teaching positions [ ] at rates equal to the average of the range of rates of basic compensation for similar positions of a comparable level of duties and responsibilities in urban school jurisdictions in the United States of 100,000 or more population." 20 U.S.C. § 903(c). Because we conclude that the Secretary of Defense (the Secretary) in this case has substantially complied with his statutory duty to fix the basic compensation for teachers and teaching positions in overseas schools at a rate equal to, including in terms of the length of the school year, that of stateside school teachers in large urban areas, we affirm the judgment of the district court—however on different grounds.

I.

The two appellant labor organizations (referred to jointly hereafter as the "overseas teachers"), Overseas Education Association, Inc. and Overseas Federation of Teachers, AFT, AFL–CIO, represent teachers who work in the overseas dependent schools of the Department of Defense.[1] The Department of Defense (the Department) maintains and operates these overseas schools for the dependents of its Armed Services and civilian employees. The Secretary is authorized pursuant to the provisions of the Defense Department Overseas Teachers Pay and Personnel Practices Act, as amended, 20 U.S.C. § 901 *et seq.* (the Act), to promulgate the conditions and terms of employment for overseas teachers. Of primary interest here is the Secretary's duty to "fix the basic compensation for teachers and teaching positions [ ] at rates equal to the average of the range of rates of basic compensation for similar positions of a comparable level of duties and responsibilities in urban school jurisdictions in the United States of 100,000 or more population." 20 U.S.C. § 903(c).

Acting pursuant to his authority under 20 U.S.C. § 902(a)(7),[2] the Secretary set the length of the overseas school year at 190 working days.[3] The average length of the stateside school year is in dispute. (App. at 5.) According to the Secretary the average stateside school year consists of 186.4 days and approximately 186 days according to the overseas teachers. It was agreed by the parties in the district court that there is at least a 3.6 days difference in the length of the school year between overseas schools and the specified stateside school districts. *Id.* The complaints of the overseas teachers

---

* For the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. These two cases were argued at the same sitting. In view of the similarity of the issues, we elect to dispose of both cases in this opinion.

2. 20 U.S.C. § 902(a)(7) provides:
   (a) Not later than the ninetieth day following July 17, 1959, the Secretary of Defense

shall prescribe and issue regulations to carry out the purposes of this chapter. Such regulations shall govern—

.   .   .   .   .

   (7) the length of the school year or school years applicable to teaching positions;

3. Department of Defense Directive 1400:13, July 8, 1976, Part IV A.

seek a recovery of damages compensating them for the additional length of their school year over the prior seven years. Brief for Overseas Education Association, Inc. at 6. The amount in dispute is approximately $320.50 per teacher per year. (App. at 62.)

The district court heard oral argument on the cross motions for summary judgment and concluded that the Department's argument had greater merit. (App. 66.) The district court ruled that the Department has the authority to set the length of the school year at 190 days; that the Department acted reasonably in its exercise of that authority; that the overseas teachers' claims were *de minimis*; and that not every facet of the compensation for overseas teachers is subject to the requirements of statutory equality. (App. 66–68.)

## II.

The overseas teachers simply contend that the Department must include the number of school days in the computation of basic compensation which would mean in this case, if their position were adopted by the court, that the Department would have to pay overseas teachers for the additional 3.6 to 4.0 days they work beyond that of their stateside counterparts.

The controlling precedent in this case, relied upon by both parties, is this court's decision in *March v. United States*, 506 F.2d 1306 (D.C.Cir.1974). In *March* six overseas teachers brought a class action challenging the methods used by the Department to fix basic salaries and other compensation. The overseas teachers alleged that the Department violated the Overseas Teachers Pay and Personnel Practices Act, *supra*, by (1) computing annual salaries on the basis of the previous year's wages, (2) placing teachers in lower salary steps than they would have been placed in stateside schools, (3) limiting credit for past teaching experience to two years, (4) making no allowance for compensatory time, and (5) calculating the daily rate of compensation, for teachers paid on a daily basis, on a 210 day school year rather than the usual 180 or 190 days. *March, supra* at 1309.

The district court in *March* held that the Department had violated the Act with respect to the limiting of credit for past teaching experience and placing teachers in lower salary steps, but held that the Department had reasonably exercised its discretion on all the remaining issues. This court on appeal affirmed the judgment granted in favor of the teachers (i.e. the past teaching experience issue) and reversed the judgment granted in favor of the Department on the other issues. Only on the issue of whether the Department had to allow the teachers compensatory time for certain activities did the Department prevail. Injunctive relief and damages were awarded to the teachers.

The court held in *March* that both the plain meaning of the statute and its underlying congressional purpose required that overseas teachers' basic compensation be equal to that of stateside teachers who perform comparable work. In reviewing the historical background of the Act, the court observed that Congress enacted the legislation in 1959 for the express purpose of remedying the deficiencies in compensation between the rate of pay for overseas teachers and that paid stateside teachers. When Congress ascertained that the Department and the courts were not interpreting the Act to give full effect to Congress' intentions, it amended the Act in 1966 to require that overseas teachers be paid "*equal to*" rather than "*in relation to*" the rates of basic compensation for similar positions in the United States. In this connection the House Committee on Post Office and Civil Service reported:

> This policy, and the mandatory payment of such equal salary rates, is consistent with, and will strengthen, the policy laid down by the Congress in the enactment of the Defense Department's Overseas Teachers Pay and Personnel Practices Act (Public Law 86–91), *which thus far has not been effectuated in accordance with congressional intent.*

H.R.Rep.No. 519, 89th Cong., 1st Sess. 4 (1965) (emphasis added).

The court in *March* elaborated on the meaning of the words "equal to": "Here Congress used the phrase 'equal to' without qualification and, lacking manifestation of a different intent, we think that temporal as well as monetary equality was contemplated." *March, supra* at 1316. The court emphasized that although it did not agree with "the teachers' position that all facets of their compensation are subject to the requirement of equality with stateside teachers, we do think that salary grade, steps and credit for past teaching experience are essential ingredients of 'basic compensation,' and therefore are covered by the 'equal to' mandate of the Act." *Id.* at 1317. Recognizing also that strict equality may not be possible in all respects, the court stated that the fit must be "*as close* [ ] *as possible.*" *Id.* at 1317–18 (emphasis added).

■ We agree with *March* that the manifest purpose of the Act is to put overseas teachers on the same plane as stateside teachers in terms of basic compensation. We also agree that strict equality may *not* be possible in all respects and therefore only require that the *rates* of basic compensation be *equal to the extent reasonably possible.*

The statutory language focuses on the *rate* of basic compensation. A rate of compensation is the *payment per unit of time* for which an employee works. Because the unit of time here, i.e. the length of the school year, is an indispensable component of the rate of compensation, the length of the school year is an essential ingredient of basic compensation. The trouble with the rate arises in this case because the unit of time is not a uniform measure. Ordinarily school teachers—with the exception of substitute teachers—receive an annual salary. School districts differ, however, in the number of school days that comprise their respective school years. In the absence of a universally recognized and calculable school year, the unit of time varies and different *rates* of basic compensation result.

The intuitive response might be to suggest that a similar, universally recognized unit of time be used to calculate the rate of compensation. The overseas teachers presumably would suggest a single school day as the unit of measure since they contend they work 3.6 to 4.0 days more than stateside teachers without pay. The use of a school day as a measure of time is fraught with the same deficiency as the use of a school year: the length of the school day varies from district to district. Because the main thrust of the overseas teachers' argument is that they are working longer for less pay than their stateside counterparts, they must show that they are actually working longer in the aggregate sense. The 3.6 to 4.0 days difference between the overseas and average stateside school years amounts *to less than ten minutes per day* when spread over the course of a 180 day school year. Hence, if it were the case that overseas teachers work 3.6 to 4.0 days more during the school year than their counterparts in a particular stateside school district but also work one half hour less each school day, in reality the stateside school teachers would be working the equivalent of over seven eight-hour working days more than the overseas teachers. This example supports the conclusion that the 3.6 to 4.0 days difference is meaningless without further examination as to length of the various school days.

In the final analysis, in order to accurately determine whether overseas teachers actually work longer than the stateside school teachers in large urban areas it would be necessary to consider additional factors such as the length of the school day, leave time allowances, and the length of lunch periods and recesses. There are many more factors which arguably should be considered because they touch to some degree on the length and rigor of a teacher's work. And yet it is clear that a point of diminishing returns is quickly reached where the administrative burden involved in gathering and evaluating more detailed information greatly exceeds the utility to be derived from the undertaking.

Based upon the statutory directive here that the Secretary fix the rate of basic compensation equal to the average of the range of rates of basic compensation for

similar positions of comparable responsibility in large urban school districts, the average is derived by annually gathering statistics from over 200 school districts. In view of the large number of stateside school districts from which data must be collected and in view of the comprehensive and detailed nature of the data that would have to be sifted through in order to insure that the rate of basic compensation for overseas teachers were strictly equal to the average of the range of rates of basic compensation for stateside school teachers, we conclude that there necessarily exists a reasonable limit to the precision with which the rates of basic compensation need be computed.

■ We note in this case that the Department's own guidelines provide that overseas teachers be given additional compensation should they be required to work over 190 days—the length of the current overseas school year.[4] Because of this limit on the variance between the number of days in the school year for overseas teachers and stateside teachers that can pass uncompensated, we hold that the Department is in substantial compliance with the statutory equality mandate, and on this ground affirm the judgment of the district court. In reaching this decision, we need not rely on the *de minimis* rule which is arguably applicable because of the ten minutes per day difference in the two school years.

Finally, we find no basis for the argument of the Overseas Federation of Teachers that the Secretary cannot alter the length of the overseas school year unless his actions are in furtherance of a legitimate educational objective. The appellant union has not cited any authority to this court which conditions the Secretary's power to set the length of the overseas school year on the existence of a legitimate educational objective.

For the reasons above stated the decision of the district court is affirmed.

*Judgment accordingly.*

---

4. DOD Directive No. 1400.13 (July 8, 1976). This Directive states in Part IV (A)(2): "Should the school year be extended beyond 190 working days, the educators will be compensated at the appropriate daily rate as of the 191st working day."